

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **DANIEL R. CHAMBERLAIN,** )<br>**CHAD A. DOTY, and** )<br>**37th PARALLEL PROPERTIES** )<br>**INVESTMENT GROUP, LLC,** )<br> )<br> **Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**EDWARD P. BARRISKILL,** )<br> )<br>**Serve:** )<br> **Edward P. Barriskill** )<br> **179 E. Country Club Drive** )<br> **Brentwood, CA  94513** )<br> )<br> **Defendant.** ) | Case No. 3:15 cv 606 |

## COMPLAINT

Plaintiffs Daniel R. Chamberlain, Chad A. Doty, and 37th Parallel Properties Investment Group, LLC, by and through counsel, and for their Complaint requesting injunctive relief and damages, and upon personal knowledge as to their own acts and circumstances and upon information and belief as to the acts and circumstances of others, allege as follows:

## NATURE OF ACTION AND CLAIMS

1.      This is an action for conspiracy to harm the Plaintiffs in their reputation, trade, business and professions under VA. CODE ANN. §§ 18.2-499 and 18.2-500, and for copyright infringement, arising out of the U.S. Copyright Laws, and common law defamation.

## PARTIES

2.      Plaintiff 37th Parallel Properties Investment Group, LLC ("37[th] Parallel")
is a limited liability company organized under the laws of the state of Nevada with its
principal place of business in Henrico County, Virginia.

3.      Plaintiff Daniel R. Chamberlain ("Chamberlain") is a member, officer and
manager of 37th Parallel.   He is a resident of the Commonwealth of Virginia and the
County of Hanover.

4.      Plaintiff Chad A. Doty ("Doty") is a member, officer and manager of 37th
Parallel. He is a resident of the Commonwealth of Virginia and the County of Henrico.

5.      Defendant Edward P. Barriskill ("Barriskill") is a member of 37th Parallel
and was previously an officer and manager of the entity.   Barriskill is a resident of the
state of California.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the claims for copyright
infringement under 28 U.S.C. §§ 1331 and 1338 (a).

7.      This Court has supplemental jurisdiction over the claims for defamation
and conspiracy to injure under 28 U.S.C. § 1367, as these claims form part of the same
case and controversy as the claim for copyright infringement, as further alleged herein.

8.      This Court may exercise personal jurisdiction over Barriskill in
accordance with VA. CODE ANN. § 8.01-328.1, as he has caused a tortious injury in the
Commonwealth of Virginia by acts or omissions in the Commonwealth and he has
caused a tortious injury in the Commonwealth by acts or omissions outside the

2

Commonwealth and he regularly does business in the Commonwealth and has engaged in a persistent course of conduct in the Commonwealth.

9.       Venue is proper in this district under 28 U.S.C. § 1391 in that a substantial part of the events and/or omissions giving rise to the claims occurred in this district, as further alleged herein.

## FACTUAL BACKGROUND

A.   37th Parallel and the Membership Dispute.

10.      In 2008, Doty and Barriskill formed 37th Parallel for the purpose of acquisition, renovation, asset management and sale of multifamily rental properties and to enable others to invest in its real estate portfolio.

11.      In September 2008, 37th Parallel retained Chamberlain on a part time basis to provide market and financial analysis and growth modeling for its real estate portfolio.

12.      In September 2009, 37th Parallel hired Chamberlain as a full time employee.   Thereafter, in October 2010, Barriskill and Doty made Chamberlain a member of the entity as well as an officer and manager of it, effective January 1, 2011.

13.      In 2011, as part of an effort to reduce 37th Parallel's start-up debt, the members decided to sell equity interests in the LLC to investors.   Ultimately, 37th Parallel sold approximately 10% of its total equity to 29 different investors (the "Equity Investor Members").

14.      Between January 2011 and April 2014, Barriskill, Doty, and Chamberlain held themselves out and operated as if each was a member, manager, and officer of 37th Parallel.

15.     During this time, Barriskill regularly conducted business in the Commonwealth of Virginia, including attending membership meetings of 37th Parallel held in Virginia, which he attended by phone or other electronic means, and also by attending classes offered by 37th Parallel in Virginia, which he attended in person.

16.     Since at least 2011 and continuing to the present, Barriskill has regularly communicated by phone, email, and other electronic means with 37th Parallel members in Virginia, including Doty, Chamberlain, and Jon Campbell, an Equity Investor Member.

17.     In January 2015, Barriskill was removed from his position as President and manager of 37th Parallel.  Before this time, he regularly participated in conference calls and meetings, either by phone or by other electronic means, with members, managers, and officers of 37th Parallel in Virginia, as well as with other employees and agents of 37th Parallel in Virginia.  These included weekly team meeting calls with the employees of 37th Parallel and weekly partners' calls among the managers and Class C members.

18.     As more specifically alleged herein, Barriskill caused tortious injury to Plaintiffs in the Commonwealth of Virginia by acts or omissions both inside and outside of the Commonwealth, to wit:  communicating multiple defamatory statements by email messages delivered in the Commonwealth of Virginia.

19.     In May 2014, Barriskill, for the first time, asserted that Chamberlain was not a manager of 37th Parallel. In August 2014, for the first time, he also asserted that Chamberlain had no ownership interest in 37th Parallel.

4

20.     From August 2014 until January 2015 the parties attempted to resolve their dispute concerning ownership of 37th Parallel.   These efforts, however, were unsuccessful.

21.     In January 2015, Chamberlain filed an action in the Circuit Court of the County of Henrico seeking declaratory judgement that he is an 18% owner of 37th Parallel, that he is the Vice President and Chief Operating Officer of 37th Parallel and that he is a Manager of 37th Parallel (the "Henrico DJ action").  The defendants in that action included Doty, Barriskill, and 37th Parallel.

22.     Barriskill responded to the Henrico DJ action by filing a notice of removal to this Court.  On April 29, 2015, this Court concluded it lacked jurisdiction over the action and remanded it back to the Circuit Court for the County of Henrico. *See Chamberlain v. 37th Parallel Properties Investment Group, LLC, et al.,* No. 3:15-cv-00080-JAG (E.D. Va. Apr. 29, 2015) (ECF Dkt. No. 28). The Henrico DJ action is still pending.

B.  The Conspiracy to Harm Plaintiffs

23.     Beginning at least as early as January 2015, Barriskill engaged in conduct in an effort to harm 37th Parallel in its business and to harm Doty and Chamberlain in their reputation, business and profession.  Barriskill, acting in concert with others, including his son-in-law Thomas J. Heaton ("Heaton"), his present business partner Steve Tovani ("Tovani"), and Equity Investor Members Paul and Judy Wilson (collectively the "Wilsons"), intentionally published defamatory statements about Doty and Chamberlain, and provided such statements, along with false and misleading information about Doty, Chamberlain, and 37th Parallel, to other Equity Investor Members and other third parties.

5

Barriskill also misappropriated 37th Parallel's intellectual property through copyright infringement and engaged in conduct, both individually and through his investment entity, Barriskill Investment Group, to unfairly compete with 37th Parallel and to harm each of the Plaintiffs.

24.     37th Parallel is a commercial real estate investment and management firm. It identifies multifamily real estate properties which are potential investment opportunities for qualified investors as direct fractional investments.   37th Parallel facilitates the acquisition of the investment properties for groups of qualified investors and then manages the assets while the investment property is held.  37th Parallel earns a one-time fee for organizing the project and putting together the investment groups, a recurring monthly asset management fee while the investment property is held, a transaction fee when the investment property is sold or refinanced, and a portion of the equity in the investment property if break-even thresholds are met when the property is sold or refinanced.

25.     To educate and attract potential investors who are interested in direct fractional investments in multifamily real estate properties, 37th Parallel conducts webinars and other educational and informational sessions.  Often, these educational and informational sessions are offered by invitation only.   37th Parallel also provides a training program called the "Multifamily Partner Program" (the "MPP") for individuals interested in creating their own direct fractional investment opportunities in commercial real estate.   The MPP course is a year-long program which provides instruction on operating and managing multifamily real estate properties. 37th Parallel charges tuition to students taking the MPP course.

26.    37th Parallel relies on its good reputation, as well as the good reputation of its members, managers, officers, and employees, especially Doty and Chamberlain, to attract investors for its direct fractional investment projects and to attract students to its MPP courses.  A good reputation is also essential to maintaining the confidence of its Equity Investor Members, who are important referral sources for new investors.

27.    On January 14, 2015, Barriskill phoned Terry Soule, an individual who had taken classes from 37th Parallel and invested in a 37th Parallel investment property, and told her that Doty was "an evil and horrible person."  Barriskill also told Mrs. Soule that "Chad [Doty] has stolen money from the company, that he has used company money for personal things, that he has taken money from the equity fund that investors have their money in and not given back as much as he should have."  Barriskill also told Mrs. Soule that Doty had taken a larger management fee than he was entitled to and that he had "proof of criminal activity by Chad [Doty]."  These statements were false.  Further, they amount to defamation *per se* in that they impute the commission of crimes of moral turpitude and that Doty has a lack of integrity in the performance of the duties of his office.

28.    Barriskill also requested Mrs. Soule "to lie to Kieran [Donohue, a 37[th] Parallel employee] and tell him that [she] wanted to get recordings of previous site visits so that [she] could study them, and then give them to Ed [Barriskill] without letting Kieran or the others at the 37[th] PP know what [she] was doing."

29.    Barriskill called Mrs. Soule again on January 20, 2015.  On this occasion, he told her that Doty had committed many criminal acts and that in a week or so, with purportedly sufficient evidence of the criminal acts, he was going to go to Richmond to

"wave the criminal acts" over Doty's head. Barriskill also told Mrs. Soule that he had plans to "merge 37[th] PP with Barriskill Investments", his real estate investing entity. He reported that he had identified a person who he had "known for over 10 years" who could "step right in and take Chad [Doty]'s place." Further, he stated to Mrs. Soule that he intended "to mirror the business model of 37th PP because he started it."

30. On January 20, 2015, in a year-end report to the Equity Investor Members, Doty informed them of the Henrico DJ action and the dispute between the Class C members, Doty, Chamberlain, and Barriskill.

31. Thereafter, on January 23, 2015, in response to Doty's notification to the Equity Investor Members, Barriskill sent an email message to the Equity Investor Members that claimed Doty had made "false and misleading statements . . . in the 37th Parallel Equity Investor Year End Letter." That claim is false. A copy of Barriskill's email to the Equity Investor Members (the "January 23 email") is attached as Exhibit A.

32. Additionally, Barriskill falsely implied that Doty was untrustworthy as the financial controller for 37th Parallel, writing that he "implicitly trusted . . . Chad [Doty], until [he] began to review the companies' books, financial records and tax returns after being informed that Dan [Chamberlain] had signed the 2013 tax returns as an owner." The assertion that Doty is untrustworthy as the financial controller is false.

33. The statements in ¶¶ 31 and 32, in the context of the January 23 email amount to defamation *per se* in that they impute that Doty has a lack of integrity in the performance of the duties of his office.

34.     In the January 23 email, Barriskill also demanded that 37th Parallel suspend its investment activities and MPP classes, actions which, he well knew, would deprive 37th Parallel of its principal sources of revenue.

35.     Beginning at a date prior to January 24, 2015 and continuing regularly thereafter, Barriskill communicated with Equity Investor Members and others associated with 37th Parallel requesting that they demand that 37th Parallel suspend its investment activities and MPP classes, and that they also demand that Doty "step down in all capacities."

36.     Barriskill also called Equity Investor Members and provided false information about the dispute and Doty's management.  For example, he called Caren Briggs, an Equity Investor Member who had referred many other investors to 37th Parallel, and told her that Doty had stolen money from the company and that Doty and Chamberlain would not permit him access to 37th Parallel's financial records.  These statements are false.  Similarly, he called Mary Ann Magnaghi, an Equity Investor Member, and told her that Doty was stealing company money.  That statement is also false.

37.     On January 24, 2015, Barriskill wrote to Equity Investor Member Kathryn Han Koo and told her that "Chad and his counsel has refused to allow the auditors to have full access to the 37th Parallel records for a full forensic audit."  This statement is false.  A copy of Barriskill's email to Ms. Koo (the "January 24 email") is attached as Exhibit B.

38.     On January 27, 2015, Barriskill forwarded a copy of the January 24 email to Equity Investor Member Richard Wahl imploring him to assist in investigating alleged

9

misdeeds by Doty and Chamberlain noting, "I need your help to for the truth to come out." Barriskill followed up his letter with a call to Wahl asking for similar assistance.

39.     From at least as early as January 2015, Barriskill conspired with other Equity Investor Members, including the Wilsons, to communicate false and defamatory statements concerning Plaintiffs, both individually and collectively.

40.     On February 1, 2014, Barriskill wrote to the Equity Investor Members claiming that he had been illegally terminated as an officer and manager of the company and that the termination was effected so that Doty and Chamberlain would "have total control of the situation and manipulate what an auditor will or will not see" when auditing 37th Parallel's financial records.   Additionally, he claimed that Doty "has continuously violated the terms of the governing documents of the companies [he] founded and by doing so breached his fiduciary duties to me as well as the companies' investors." These statements are false.  A copy of this email (the "February 1 email") is attached as Exhibit C.

41.     The statement in ¶ 40 asserting that Doty had breached his fiduciary duties to Barriskill and the Equity Investor Members, in the context of the entire communication, amounts to defamation *per se* in that it imputes that Doty has a lack of integrity in the performance of the duties of his office.

42.     Additionally, in the February 1 email, Barriskill wrote that accountants hired by him had "discovered that a $523,000 equity transfer was made to Dan [Chamberlain] by Chad [Doty] without my knowledge or approval." This statement is false.

43.     The statement in ¶ 42, in the context of the entire communication, amounts to defamation *per se* in that it imputes that Doty has a lack of integrity in the performance of the duties of his office.

44.     On or before February 4, 2015, Barriskill called Dennis Bethel ("Bethel"), a person who, on information and belief, Barriskill knew was a significant source of investor referrals for 37th Parallel, to discuss the circumstances of the dispute.

45.     The same day, the Wilsons, acting in concert with Barriskill, wrote to Doty demanding that Barriskill be reinstated as an officer and manager and demanding that 37th Parallel suspend its investment activities and MPP courses. The Wilsons, acting in concert with Barriskill, forwarded the February 4th message to Bethel. A copy of the email (the "February 4 email") is attached as <u>Exhibit D</u>.

46.     On February 22, 2015, the Wilsons, acting in concert with Barriskill, forwarded an email to the Equity Investor Members requesting information from other Equity Investor Members and suggesting that they had not been properly paid by 37th Parallel. The email was forwarded to Gil Petrina and Jon and Jen Campbell in Virginia and, on information and belief, it was delivered by the use of a computer and/or computer network in Virginia. A copy of the email (the "February 22 email") is attached as <u>Exhibit E</u>.

47.     On February 26, 2015, Barriskill wrote to the Equity Investor Members and encouraged them to join him in demanding that 37th Parallel suspend its investment activities and MPP courses, and stating:

> Since Sept. 9[th] when I unveiled to Chad what I had found out with all the misappropriation of funds, extra salary, bonuses and the loans Chad and Dan have NOT been honest with me and come clean, and I have not seen one bit of remorse.

. . .

> Because Chad and Dan have chose [sic] their path of dishonesty, I
> requested many times NOT to start any more MPP Programs and not
> submit any LOI's or purchase contracts on new MFAB's, my requests
> have been ignored.

These statements are false. A copy of the email message (the "February 26 email") is

attached as Exhibit F.

48.     The statements in ¶ 47, in the context of the entire communication,

amount to defamation *per se* in that these impute that Chamberlain and Doty have a lack

of integrity in the performance of the duties of their offices and prejudices them in the

performance of their duties.

49.     Gil Petrina, Jon Campbell, and Jen Campbell received the February 26

email which, on information and belief, was delivered by the use of a computer and/or

computer network in Virginia.

50.     On the same day and in response to the February 26 email, Equity Investor

Member Bonnie Drumwright replied by email message to other Equity Investor Members

writing, "I can better understand why the idea of replacing these crooks soon is a better

plan before they totally bankrupt what could be such a viable business if not for

unmitigated greed and lack of foresight." This statement is false in asserting that Doty

and Chamberlain had committed crimes and were acting out of unmitigated greed and

with a lack of foresight.

51.     On March 6, 2015, the Wilsons, acting in concert with Barriskill, wrote to

other Equity Investor Members stating

> As you and Tim and other (Equity and MFA and MPP) Investors know,
> there is MUCH more at stake here than just a $50,000 individual
> investment or a $100,000 individual investment; it is all of those who have

invested in the Equity and MFA programs – in short MILLIONS and MILLIONS of (hard earned) investment dollars that these two men have been (sort of) managing on our behalf. We are just now seeing some the GROSS and WILLFUL mismanagement of <u>our funds</u> and some very disturbing (UNAUTHORIZED AND UNAPPROVED) financial transactions that went on behind the scenes that, when discovered by Ed, led to the current status of his (what we are understanding now as TOTALLY unlawful) defrocking as President and Managing Partner of 37th PP

These statements are false. A copy of this email (the "March 6 email") is attached as

<u>Exhibit G.</u>

52. The statements in ¶ 51, in the context of the entire communication, amount to defamation *per se* in that it imputes that Chamberlain and Doty have a lack of integrity in the performance of the duties of their offices in that they had willfully mismanaged investor funds.

53. Gil Petrina, Jon Campbell, and Jen Campbell received a copy of the March 6 email in Virginia, which was, on information and belief, delivered by the use of a computer and/or computer network in Virginia.

54. On March 18, 2015, Tovani, acting in concert with Barriskill, attempted to obtain information about a commercial real estate investment opportunity being offered by 37th Parallel known as the Oaks of Westchase. Because Tovani was not an approved investor, his request for information was rejected. Thereafter, Tovani provided the necessary information and was approved as a qualified investor and did not disclose any current or contemplated business relationship with Barriskill. Tovani subsequently participated by phone in an Approved Investor conference call with 37th Parallel on April 10, 2015.

55.     On April 16, 2015, Barriskill filed a Verified Complaint against Chamberlain and Doty in the First Judicial District for the State of Nevada in and for the County of Carson City (the "Nevada Action"). In the Nevada Action, Barriskill alleged that Doty and Chamberlain breached fiduciary duties to 37th Parallel, that they had wasted the company's assets by wrongful acts, that they were unjustly enriched by wrongful acts they committed, that they had made fraudulent misrepresentations, converted assets belonging to him and defamed him, and that they had grossly mismanaged the company. Barriskill sought reinstatement as a manager of 37th Parallel, money damages, an accounting, and equitable relief.  Notably, Barriskill sought a temporary restraining order ("TRO") to, *inter alia,* prevent 37th Parallel from completing a real estate closing for the investment property the Oaks of Westchase which was scheduled to close within days of the filing of the Verified Complaint.

56.     The same day, April 16, 2015, Barriskill, without authority from 37th Parallel, filed a Verified Complaint in the same Nevada forum purporting to be an action by 37th Parallel against Chamberlain and Doty (the "37th Parallel Nevada Action").  This Action  raised the same claims and sought the same relief as the Nevada Action against Doty and Chamberlain

57.     In both Nevada Actions, Barriskill also sought the appointment of Russell Schaadt ("Schaadt") as a receiver for 37th Parallel.  Schaadt formerly served as the Chief Operating Officer of the real estate investment firm Maier Siebel Baber, where Tovani is presently an Executive Vice President.

58.     On April 13, 2015, Schaadt visited the 37th Parallel web site, provided his contact information, and viewed several on-line webinars.  Thereafter, on April 20, 2015,

14

after both Nevada Actions had been filed but before either had been served on Doty and Chamberlain, Schaadt arranged to be called by a sales representative of 37th Parallel by using an on-line scheduling tool.

59.     On April 21, 2015, Don Duncan, a sales representative for 37th Parallel, called Schaadt.   During the call, Schaadt posed as a potential investor seeking information about potential investments, notwithstanding that, on information and belief, he knew that Barriskill was seeking his appointment as receiver of 37th Parallel.  Schaadt did not disclose his relationship with Barriskill or that Barriskill had filed an action seeking Schaadt's appointment as receiver.  Chamberlain and Doty were first made aware of the Nevada Actions through counsel on April 23, 2015.

60.     On April 28, 2015, an evidentiary hearing on the request for a TRO was held in Carson City, Nevada in the Nevada action.  After hearing the evidence, the court denied the request for temporary restraining order.  The court noted that "there is little doubt in the Court's mind that at least as to 2011, Mr. Chamberlain became a managing member of the LLC . . . ."  The Nevada court further remarked that, "it is clear from the testimony that Mr. Barriskill has had the opportunity to review the books and records and has never asked in respect (sic) to do so in respect to this particular matter. . . . If he's had these concerns all along he should have filed something earlier in respect to this matter not two days before a closing in respect of a major transaction that will have serious impact in respect to this LLC . . . ."

61.     The very next day, April 29, 2015, the Wilsons, acting in concert with Barriskill, forwarded a copy of the Verified Complaint in the Nevada Action to the Equity Investor Members attempting to persuade them to make further demands upon

Plaintiffs and asserting that Doty was continuing to withhold documents from the auditors retained by Barriskill. On May 2, 2015, by an email message delivered to the other Equity Investor Members, the Wilsons further implored them to "send a demand letter via email every week and copy all other investors."

62.     Gil Petrina received a copy of the April 29 email and May 2 email in Virginia, which, on information and belief, were delivered by the use of a computer and/or computer network in Virginia.

63.     On information and belief, neither Barriskill nor the Wilsons reported the Nevada court's findings, *see supra,* ¶ 60, to the Equity Investor Members.

64.     On May 28, 2015, Barriskill moved to voluntarily dismiss the Nevada action.

65.     On June 3, 2015, Barriskill wrote to various people, including Equity Investor Members and others with a relationship with 37th Parallel, to inform them that he was parting ways with 37th Parallel (the "June 3 email"). He wrote: "Recently, I have chosen to part ways with 37[th] PP due to professional personal, moral and ethical business reasons. It's important to me when working with investors in the Multifamily space, that honesty, integrity and trust is essential." The message also noted that "along with Steve Tovani, an investor friend [he has] known for almost 10 years" he was going to "move forth with Barriskill Investment Group." These statements are false. A copy of the text of the June 3 email is attached as Exhibit H.

66.     The statements in ¶ 65 asserting that Barriskill had parted ways with 37th Parallel, that he had done so for personal, moral and ethical business reasons and that honesty and integrity were essential to him, in the context of his frequent and recent

16

communications with Equity Investor Members, amounts to defamation *per se* in that it imputes that Chamberlain and Doty lack honesty and integrity in the performance of the duties of their respective offices.

67.     On July 2, 2015, Heaton, an investor in a 37th Parallel property known as Hunter's Point Apartments, acting in concert with Barriskill, wrote to other investors in the Hunter's Point Apartments project and others (the "July 2 email"). In his email, Heaton falsely stated that "Ed had discovered misappropriation of 37[th] Parallel funds by Chad [Doty] and Dan [Chamberlain]" and that under their management, 37th Parallel was "attempting to refinance Hunter's Point only two years after it was just refinanced" and suggesting that Doty and Chamberlin would receive income from this refinance. These statements are false. Additionally, Heaton stated, "37[th] Parallel is currently in ongoing litigations [sic] due to the misappropriation of company funds by Chad & Dan" and that he had "emailed Chad/Dan/Don asking very pointed questions regarding this property." These statements are also false. A copy of the July 2 email is attached as Exhibit I.

68.     The statements in ¶ 67 asserting that Barriskill had discovered that Doty and Chamberlain had misappropriated 37th Parallel funds and that 37th Parallel was engaged in ongoing litigation over the misappropriation of funds in the context of the entire communication amount to defamation *per se* in that these impute that Chamberlain and Doty lack integrity in the performance of the duties of their respective offices.

69.     Barriskill, Heaton, and the Wilsons, in furtherance of the conspiracy to injure Plaintiffs and acting in concert, published their defamatory statements and otherwise communicated false information about Chamberlain and Doty with the

intention of purposefully harming 37th Parallel in its reputation and business and Chamberlain and Doty in their reputation, business and profession.

C. Copyright Infringement

70.    In 2011, Doty and other employees of 37th Parallel, in the course and scope of their duties with 37th Parallel, created a document entitled "Achieving Permanent Wealth An Introduction to Commercial Multifamily Investing" (hereafter "Multifamily Investing"). This material was created for presentations by 37th Parallel to investors interested in investing in commercial multifamily real estate properties. The material was used by 37th Parallel and its employees, including Barriskill, in a number of investor presentations between 2011 and 2015.

71.    In 2012, Doty and other employees of 37th Parallel, in the course and scope of their duties with 37th Parallel, created a document entitled "Achievement Permanent Wealth through Multifamily Investing" (hereafter "Permanent Wealth"). Like Multifamily Investing, this material was created as 37th Parallel's corporate overview for presentation to potential investors interested in investing in commercial real estate properties held by 37th Parallel. Permanent Wealth was used by 37th Parallel and its employees, including Barriskill, in a number of communications and presentations to investors between 2012 and 2015.

72.    On January 21, 2015, Barriskill requested that 37th Parallel employee Kieran Donohue forward a copy of the Permanent Wealth work to him. Donohue sent the Permanent Wealth work to Barriskill via Barriskill's 37th Parallel email address. Thereafter, Barriskill forwarded a copy of the work to his personal email at edbarriskill@comcast.net.

18

73.    On September 14, 2015, 37th Parallel obtained United States copyright registrations for the Multifamily Investing and Permanent Wealth works. Specifically, 37th Parallel obtained US Registration Number TX 8-078-278 for the work, "Achieving Permanent Wealth An Introduction to Commercial Multifamily Investing" and it obtained US Registration Number TX 8-078-277 for the work, "Achievement Permanent Wealth" (collectively, the "37[th] Parallel works").

74.    At an unknown date in 2015, either Barriskill and/or Tovani, acting in concert with Barriskill, provided the content for the web site at the URL www.barriskillinvestmentgroup.com (the "BIG web site").

75.    Significant portions of the content at the BIG web site were copied from the 37th Parallel works. For example, the BIG web site notes:

> At the Barriskill Investment Group, our mission is to significantly increase your cash flow and help you build Permanent Wealth. We provide you with proven inflation-resistant investments that can generate a stable cash yield and increased equity over the long-term.

Page 1 of Permanent Wealth is virtually identical:

> At 37[th] Parallel Properties, our mission is to significantly increase your cash flow and help you Achieve Permanent Wealth®. We provide you with proven inflation-resistant investments that can generate a stable cash yield and increased equity over the long-term.

76. Similarly, the strategy page of the BIG web site notes:

> The Permanent Wealth Architecture meets this need in five ways:
> 1.    Principal Safety. The security of your original investment is our primary focus.
> 2.    Stable Cash Returns. Our investments are structured to generate quarterly income.

3.      Increasing Cash Returns. Your income can increase over time due to rent increases, expense reductions and property improvements.

4.      Growing Equity. By growing rent, improving the property and reducing the principal, your equity can increase steadily over time.

5.      Opportunity to Accelerate. To accelerate your wealth, your investments will have the ability to "cascade up," increasing Cash Yield or Equity Growth at liquidity events every 4-6 years.

This material is copied verbatim from page 2 of Permanent Wealth. Additional material copied verbatim from page 3 of the Permanent Wealth work appears on the BIG site.

77.      On September 1, 2015, Barriskill forwarded an invitation for a webinar to various potential investors including the Wilsons (the "BIG invitation"). The BIG Invitation was copied in substantial part from an invitation prepared by 37th Parallel for an investor presentation to be held on September 13, 2014. A copy of the BIG Invitation is attached as Exhibit J and a copy of 37th Parallel's invitation is attached as Exhibit K.

78.      The Wilsons, acting in concert with Barriskill, forwarded the BIG Invitation to others, including many other Equity Investor Members, such as Gil Petrina and Jon Campbell in Virginia. Upon information and belief, in forwarding the BIG Invitation to the Equity Investor Members in Virginia, the Wilsons used a computer and/or computer network in Virginia.

79.      On September 3, 2015, Barriskill presented a webinar to investors who might be interested in investing in BIG projects (the "BIG Presentation").

80.      Substantial portions of the materials used by Barriskill in the BIG Presentation were copied from the Multifamily Investing and Permanent Wealth works. For example:

20

a. The material on the slide presented by Barriskill captioned "Prime Drivers" was copied in substantial part from a slide in Multifamily Investing. A copy of Barriskill's slide is attached as Exhibit L and a copy of the Multifamily Investing slide is attached as Exhibit M.

b. The material on the slide presented by Barriskill captioned "Dare to Compare" was copied in substantial part from a slide in Multifamily Investing. A copy of Barriskill's slide is attached as Exhibit N and a copy of the Multifamily Investing slide is attached as Exhibit O.

c. The material on the introductory slide presented by Barriskill was copied in substantial part from a slide in Multifamily Investing. A copy of Barriskill's slide is attached as Exhibit P and a copy of the Multifamily Investing slide is attached as Exhibit Q.

Nearly all of the material on each of the slides in the BIG Presentation was copied, in significant part, from one of the 37th Parallel works.

81.     Barriskill, Tovani, and the Wilsons, acting in concert, circulated the BIG Invitations with the intention of purposefully harming 37th Parallel, Doty and Chamberlain in their business. Further, either Barriskill, and/or Tovani, acting in concert with Barriskill, in providing content to the BIG web site, unlawfully copied and published the 37th Parallel works and unlawfully copied, published, and distributed the

37th Parallel works at the BIG Presentation with the intention of purposefully harming 37th Parallel, Doty and Chamberlain in their business.

## COUNT I
## Copyright Infringement

82.    Plaintiffs incorporate here the allegations set forth in paragraphs 1-81 above, as though fully set forth here.

83.    This cause of action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*

84.    Barriskill's unauthorized copying, publishing, and distribution of the 37th Parallel's works was intentional, done with full knowledge of the intellectual property rights of 37th Parallel, and in and furtherance of a conspiracy to injure 37th Parallel in its business and reputation, and Doty and Chamberlain in their business, profession and reputation.

85.    Upon information and belief, by and through his willful and misleading conduct Barriskill has made and will continue to make substantial profits and gains to which he is not, in law or in equity, entitled, and in direct violation of 37th Parallel's exclusive rights.

86.    As a direct and proximate result of Barriskill's acts of copyright infringement, 37th Parallel has and continues to be irreparably injured and monetarily damaged.   37th Parallel has no adequate remedy at law.

87.    As a result of Barriskill's willful and wrongful conduct, 37th Parallel is entitled to recover damages which include any and all profits that Barriskill has made as a result of his unauthorized copying, publishing, and distribution of the 37th Parallel works,

and the losses 37th Parallel has suffered due to Defendant's misconduct, pursuant to 17 U.S.C. § 504(a)(1).

## COUNT II
## Defamation *Per Se*

88.     Plaintiffs incorporate here by reference the allegations in paragraphs 1-87 above as if fully set forth herein.

89.     The January 23 email is false and contains false factual statements, which harmed Doty in his reputation.  The email is defamatory and constitutes defamation *per se*.

90.     The February 1 email is false and contains false factual statements, which harmed Doty in his reputation.  The email is defamatory and constitutes defamation *per se*.

91.     The February 26 email is false and contains false factual statements, which harmed Chamberlain and Doty in their reputation.  The email is defamatory and constitutes defamation *per se*.

92.     The June 3 email is false and contains false factual statements, which harmed Chamberlain and Doty in their reputation.  The email is defamatory and constitutes defamation *per se*.

93.     The March 6 email was sent in furtherance of the conspiracy with Barriskill to harm 37th Parallel, Doty and Chamberlain.  It is false and contains false factual statements, which harmed Plaintiffs Chamberlain and Doty in their reputation. The email is defamatory and constitutes defamation *per se*.

94.     The July 2 email is false and contains false factual statements, which harmed Chamberlain and Doty in their reputation.   The email is defamatory and constitutes defamation *per se.*

95.     Barriskill knew that the January 23 email letter, the February 1 email, the February 26 email, the March 6 email, and the July 2 email were false and/or lacked a reasonable basis for believing that any of them were true.

96.     Barriskill published the January 23 email, the February 1 email, the February 26 email, and the June 3 email intentionally, with actual malice, intending to harm Plaintiffs and intending for the Equity Investor Members to re-publish the defamatory statements.   The Wilsons, in the furtherance of the conspiracy and acting in concert with Barriskill, published the March 6 email to Equity Investor Members intentionally, with actual malice, intending to harm Plaintiffs and intending for the Equity Investor Members to re-publish the defamatory statements.   Heaton published the July 2 email intentionally, with actual malice, intending to harm Plaintiffs and intending for the recipients, including Equity Investor Members, to re-publish the defamatory statements.

97. As a direct and proximate cause of the publication of the January 23 email, the February 1 email, the February 26 email, the June 2 email and the July 2 email, the reputations of Chamberlain and Doty were harmed and each suffered damage.

## COUNT III
## Conspiracy to Injury

98.     Plaintiffs incorporate by reference the allegations in paragraphs 1-97 above as if fully set forth herein.

99.     This cause of action arises under Virginia Code §§ 18.2-499 and 18.2-500.

100. Barriskill and others, including the Wilsons, Heaton and Tovani acted in concert, by agreement and with a mutual understanding, to intentionally, purposefully and without lawful justification injure Plaintiff 37th Parallel in its reputation and business and injure Plaintiffs Doty and Chamberlain in their reputation, business and profession.

101. Upon information and belief, by this conspiracy, Barriskill has made and will continue to make substantial profits and gains to which he is not, in law or in equity, entitled.

102. As a direct and proximate result of the conspiracy to injure, Plaintiffs have each had their reputations tarnished and they have lost the esteem and respect of actual and potential investors, including the Equity Investor Members of 37th Parallel and investors in Hunters Point Apartments.

103. As a direct and proximate result of this conspiracy to injure, Plaintiffs have suffered a loss of business revenue.

104. As a result of Barriskill's willful and wrongful conduct, Plaintiffs, individually and collectively, are entitled to recover treble damages sustained, along with costs including reasonable attorneys' fee, all pursuant to VA. CODE ANN. § 18.2-500.

105. Barriskill performed the unlawful acts alleged herein with actual malice, and willfully and wantonly. Accordingly, Plaintiffs, individually and collectively, are also entitled to punitive damages.

106. By reason of the unlawful conspiracy and unlawful acts committed by Barriskill and those acting in concert with him, Plaintiffs, individually and collectively, have suffered irreparable harm and have no adequate remedy in law.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs 37th Parallel Properties Investment Group, LLC, Daniel R. Chamberlain and Chad A. Doty respectfully requests that this Court enter judgment in their favor against Defendant Edward P. Barriskill and that it:

A. Award 37th Parallel Properties Investment Group, LLC actual and punitive damages in an amount not less than $1,350,000;

B. Award Daniel R. Chamberlain actual and punitive damages in an amount not less than $1,350,000;

C. Award Chad A. Doty actual and punitive damages in an amount not less than $1,350,000;

D. Award Plaintiffs costs and attorneys' fees incurred in accordance with VA. CODE ANN. §§ 18.2-499 and 18.2-500.,

E. Find that Barriskill has violated and intends to continue to violate U.S. Copyright Laws;

F. Order that Barriskill and all those acting in concert or participation with him (including, but not limited to Barriskill Investment Group and its officer directors, agents, members, related companies, successors, and contracting parties) be permanently enjoined and restrained from:

    a. Using 37th Parallel works and/or other intellectual property;

    b. Engaging in any activity which constitutes misappropriation of 37th Parallel's intellectual property; and

    c. Engaging in any activity that will cause detriment, harm or damage to 37th Parallel's intellectual property.

G. Order that Barriskill destroy and delete any materials, including without limitation, the portions of the BIG web site comprising or containing 37th Parallel's intellectual property; and

H. Order Barriskill to provide Plaintiff 37th Parallel with an accounting of all revenue directly or indirectly generated by Defendant or his agents arising from or related to 37th Parallel's intellectual property.

## JURY DEMAND

Plaintiffs demand trial by jury.

Respectfully submitted,

DANIEL R. CHAMBERLAIN, CHAD A. DOTY, and
37TH PARALLEL PROPERTIES INVESTMENT GROUP, LLC

Charles M. Allen (VA Bar No. 30183)
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, Virginia 23060
Email: callen@goodmanallen.com
Phone: (804) 346-0600
Fax:    (804) 346-5954
*Counsel for Plaintiff Daniel R.*
*Chamberlain*

Kevin W. Mottley (VSB No. 40179)
Benjamin P. Kyber (VSB No. 85604)
THE MOTTLEY LAW FIRM PLC
1700 Bayberry Court, Suite 203
Richmond, Virginia 23226
Phone: (804) 930-1022
Fax:    (804) 767-2592
Email: kevinmottley@mottleylawfirm.com
benkyber@mottleylawfirm.com
*Counsel for Plaintiff Chad A. Doty*

Robert D. Michaux (VA Bar No. 80701)
Lee Stephens Law, P.C.
4501 Irvington Road, Suite 300
P.O. Box 70
Irvington, Virginia  22480
Phone:  804-480-4090
Fax: 804-482-2480
Email: robert@leestephenslaw.com

*Counsel for Plaintiff 37th Parallel Properties*
*Investment Group, LLC*

Respectfully submitted,

DANIEL R. CHAMBERLAIN, CHAD A. DOTY, and
37TH PARALLEL PROPERTIES INVESTMENT GROUP, LLC

_____
Charles M. Allen (VA Bar No. 30183)
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, Virginia 23060
Email:  callen@goodmanallen.com
Phone: (804) 346-0600
Fax:    (804) 346-5954
*Counsel for Plaintiff Daniel R.*
*Chamberlain*

_____
Kevin W. Mottley (VSB No. 40179)
Benjamin P. Kyber (VSB No. 85604)
THE MOTTLEY LAW FIRM PLC
1700 Bayberry Court, Suite 203
Richmond, Virginia 23226
Phone: (804) 930-1022
Fax:    (804) 767-2592
Email: kevinmottley@mottleylawfirm.com
benkyber@mottleylawfirm.com
*Counsel for Plaintiff Chad A. Doty*

_____
Robert D. Michaux (VA Bar No. 80701)
Lee Stephens Law, P.C.
4501 Irvington Road, Suite 300
P.O. Box 70
Irvington, Virginia 22480
Phone: 804-480-4090
Fax: 804-482-2480
Email:  robert@leestephenslaw.com

*Counsel for Plaintiff 37th Parallel Properties*
*Investment Group, LLC*